UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRE CALIX,<br><br>                    Petitioner,<br><br>-against-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 20 Cv. 9680 (LAP)<br>13 Cr. 0582 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Andre Calix's motion for conditional bail pending resolution of his motion for reconsideration (the "Bail Mot."), (dkt. no. 12), the Government's opposition, (dkt. no. 13), and Mr. Calix's reply, (dkt. no. 18). For the reasons set out below, the motion is denied.

**I. Background**

  **a. The Offense Conduct**[1]

Between June 3 and July 18, 2013, Mr. Calix committed a series of bank robberies in Manhattan by passing notes demanding money to bank tellers. (See Revised Presentence Investigation Report ("PSR"), dated Dec. 8, 2017 [dkt. no. 124] ¶¶ 15-23.) On July 8, 2013, during one such robbery, Mr. Calix brandished a loaded firearm at two tellers after one of them refused to comply with Mr. Calix's demands. (See id. ¶¶ 20-21.) On July 18, 2013,

---

[1] Unless otherwise specified, all citations to docket entries in the Background section refer to the underlying criminal action, Case No. 13-cr-582.

officers arrested Mr. Calix, who had previously been convicted of a felony, at his apartment. (See id. ¶ 23.) During his arrest, officers recovered the firearm Mr. Calix used in the July 8, 2013 robbery. (See id.)

### b. Procedural History

#### i. The Trial Proceedings

A superseding indictment was filed on May 28, 2014, charging Mr. Calix on nine counts: (1) six counts of bank robbery in violation of 18 U.S.C. § 2113(a); (2) one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); (3) one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (4) one count of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (See Superseding Indictment, dated May 28, 2014 [dkt. no. 26] ¶¶ 1-9.)

During a pretrial conference, Mr. Calix made statements that raised questions as to his competency to stand trial, prompting the Court to order a competency evaluation conducted by the Metropolitan Correctional Center ("MCC"). (See Order Den. Mot. to Vacate Sentence, dated Dec. 15, 2022 [dkt. no. 155] at 3; dkt. no. 40.) That evaluation determined that Mr. Calix was competent to stand trial. (See Order Den. Mot. to Vacate Sentence at 3.) However, defense counsel raised concerns over those findings and requested "a more complete competency evaluation" because

Mr. Calix "declined to participate in the [first] evaluation and refused to answer questions" and due to Mr. Calix's "continued refusal to communicate with counsel and his bizarre in-court behavior." (See dkt. no. 47 at 2-3.)  In light of this request, and after Mr. Calix made "confusing statements" during another pretrial conference, the Court ordered a second competency evaluation by MCC.  (See Order Den. Mot. to Vacate Sentence at 3-4; dkt. no. 56.)  Mr. Calix was again found competent to stand trial.  (See Order Den. Mot. to Vacate Sentence at 4.)

On October 6, 2015, Mr. Calix's defense counsel requested a third evaluation in light of concerns with the second evaluation raised by, and Mr. Calix's refusal to meet with, the defense's psychiatrist.  (See id. at 4; dkt. no. 69 at 2:23-25, 3:1.)  The Court then issued an order, under 18 U.S.C. § 4241(b), transferring Mr. Calix to Federal Medical Center-Devens ("FMC Devens") for ninety days for further evaluation.  (See Order Den. Mot. to Vacate Sentence at 4, 12.)

On January 19, 2016, the Court found Mr. Calix competent to stand trial based on the results of the third competency evaluation and the Court scheduled trial.  (See id. at 4; dkt. no. 74 at 7:2-7.)  Due to Mr. Calix's continued refusal to meet with defense counsel, however, the Court adjourned trial on two occasions.  (See Order Den. Mot. to Vacate Sentence at 4-5.)  The Court adjourned

trial for a third time due to a scheduling conflict for counsel. (See id. at 5.)

Mr. Calix's trial began on September 11, 2017-three years after he was originally indicted. (See id. at 6.) On September 19, 2017, a jury found Mr. Calix guilty on all counts. (See id.; dkt. no. 109.) On June 20, 2018, the Court sentenced Mr. Calix to 300 months imprisonment. (See dkt. no. 138 at 3.) According to the BOP website, Mr. Calix still has approximately ten years of his sentence remaining. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Oct. 24, 2024).

### ii. The Appeal

On June 21, 2018, Mr. Calix appealed his conviction, (dkt. no. 139), arguing that (1) his right to a speedy trial under the Speedy Trial Act had been violated due to delays resulting from the competency evaluations and the Government's request for adjournment, (2) his Fifth Amendment right to due process had been violated because the Court did not order a fourth competency evaluation before trial, and (3) his Sixth Amendment right to an impartial jury trial had been violated by the Court's denial of Mr. Calix's "request for a new venire panel after the existing panel heard him making noises in a nearby room." See United States v. Calix, 787 F. App'x 4, 5-6 (2d Cir. 2019) (summary order).

4

On September 12, 2019, the Court of Appeals affirmed the conviction. Id. at 8. The Court of Appeals held that the delays raised by Mr. Calix did not result in any Speedy Trial Act violations. See id. at 6-7. The Court of Appeals also noted that the Government's request for adjournment resulted in part from Mr. Calix's "continued refusal to work with counsel" and, accordingly, found no error in the Court's determination that "failure to grant the adjournment would deny defense counsel the reasonable time necessary for effective preparation." See id. at 6-7. The Court of Appeals also concluded that the Court had not abused its discretion in declining to order a fourth competency evaluation and determined that the Court had taken "suitable steps to safeguard the jury's impartiality." See id. at 7.

### iii. The Habeas Proceedings

While his appeal was pending before the Court of Appeals, Mr. Calix filed a petition to vacate his conviction pursuant to 28 U.S.C. § 2241 (the "First Habeas Petition") in the U.S. District Court for the Eastern District of New York. (See Mot. to Vacate, No. 18-cv-2966 (E.D.N.Y. filed May 16, 2018) ECF 1.) That court construed the First Habeas Petition under 28 U.S.C. § 2255 and, pursuant to § 2255(e),[2] transferred the case to this Court on May 24, 2018, which resulted in the commencement of a civil action,

---

[2] 28 U.S.C. § 2255(e) requires writs of habeas corpus under § 2255 to be brought in the sentencing court.

5

Case No. 18-cv-4613.  This Court denied the First Habeas Petition without prejudice as premature in light of Mr. Calix's pending appeal before the Court of Appeals. (See dkt. no. 143 at 2.)

While the First Habeas Petition was pending before this Court, and while his appeal was pending before the Court of Appeals, Mr. Calix filed a second motion to vacate his sentence (the "Second Habeas Petition"), prompting the commencement of another civil action, Case No. 18-cv-6323.  (See dkt. no. 140; Mot. to Vacate, No. 18-cv-6323 (S.D.N.Y. filed June 26, 2018) ECF 1.)  The Court again denied the Second Habeas Petition without prejudice as premature in light of Mr. Calix's pending appeal before the Court of Appeals.  (See dkt. no. 141 at 1-2.)

On November 2, 2020, Mr. Calix filed a third motion to vacate, set aside, or correct his sentence or conviction pursuant to 28 U.S.C. § 2255 (the "Third Habeas Petition"), which in turn triggered the opening of a third civil docket, Case No. 20-cv-9680. (See dkt. no. 148; Mot. to Vacate, No. 20-cv-9680 (S.D.N.Y. filed Nov. 16, 2020) ECF 1.)  In the Third Habeas Petition, Mr. Calix asserted that he had been denied effective assistance of counsel (1) in connection with his right to a speedy trial on two occasions before trial and (2) due to a conflict of interest between his appellate and trial counsel.  (See dkt. no. 155 at 11-12.)

With regard to his speedy-trial claims, Mr. Calix first argued that he had been denied effective assistance of counsel when trial

6

counsel requested a third competency evaluation, resulting in his transfer to FMC Devens for ninety days. (See Third Habeas Petition at 6.) Mr. Calix claimed that the ninety-day period exceeded the maximum period for commitment allowed under 18 U.S.C. § 4247(b) and such an order was "contrary to [his] best interests." (See id.) Mr. Calix also argued that he had been denied effective assistance of counsel because trial counsel filed motions to dismiss under the Speedy Trial Act, not under his constitutional right to a speedy trial. (See id. at 7.)

As to his conflict-of-interest claim, Mr. Calix alleged that he suffered from an actual conflict involving his appellate and trial counsel, both of whom were members of the same office of the Federal Defenders of New York. (See id. at 16.) Mr. Calix claimed that appellate counsel had not raised on appeal trial counsel's alleged error in requesting the third competency evaluation, which allegedly resulted in his conflicted representation on appeal. (See id. at 16-18.)

On December 15, 2022, this Court denied the Third Habeas Petition. (Dkt. no. 155.) As to his first speedy-trial claim, the Court found no denial of effective assistance of counsel because, regardless of any violation of § 4241(b), trial counsel's request for a third competency hearing was "sound strategy" given "the importance of determining whether Mr. Calix was competent to

stand trial, in combination with the [defense's] asserted inaccuracy of the previous competency findings." (Id. at 14.)

As to his second speedy-trial claim, the Court found no denial of effective assistance of counsel under the factors laid out in Barker v. Wingo, 407 U.S. 514 (1972). (See id. at 15.) The Court determined, inter alia, that Mr. Calix could not meet the second Barker factor, the reason for delay, because "much of the delay resulted from Mr. Calix's" own actions, including his "refusal to speak or meet with trial counsel and psychiatric professionals, which necessitated multiple adjournments of trial." (See id.)

As to his conflict-of-interest claim, the Court found that Mr. Calix had failed to prove affirmatively any prejudice resulting from appellate counsel's decision not to raise on appeal the issues surrounding the third competency hearing. (See id. at 18-19.)

On January 13, 2023, Mr. Calix filed a motion for reconsideration of the order denying the Third Habeas Petition. (See dkt. no. 156.) Mr. Calix claimed that this Court had misapplied federal law and had failed to apply Second Circuit precedent when it denied his ineffective-assistance-of-counsel claim pertaining to trial counsel's decision to request a third competency hearing, which Mr. Calix called an "illegal commitment order." (See id. at 9-13, 15.) He also asserted that the Court had erred by "fail[ing] to apply the principles of actual conflict

in holding that [he] did not affirmatively prove prejudice" as to his appellate counsel's alleged conflict of interest. (Id. at 3.)

### iv. The Instant Motion

On April 17, 2023, Mr. Calix filed pro se the instant motion for conditional bail pending resolution of his motion for reconsideration, arguing that his "case presents substantial claims likely to succeed on the merits" and that the case is "unusual" or otherwise presents "extraordinary circumstances" necessitating his release on bail. (Bail Mot. at 1.)

On November 6, 2023, after Mr. Calix filed the instant motion, his former trial counsel informed the Court that the Government had recently disclosed potentially exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), regarding one of the Government's expert witnesses at trial. (See dkt. no. 160 at 1.) As such, the Court has deferred ruling on Mr. Calix's motion for reconsideration until after the parties have completed their investigation into the Brady disclosures. (See dkt. no. 161.) Mr. Calix moves now for bail pending resolution of his motion for reconsideration. (See dkt. no. 165 at 1.)

## II. Applicable Law

A district court "has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody." Mapp v. Reno, 241

9

F.3d 221, 226 (2d Cir. 2001) (quoting Ostrer v. United States, 584 F.2d 594, 596 n.1 (2d Cir. 1978)).  However, this power is "a limited one, to be exercised in special cases only," id. at 226, making the standard "a difficult one to meet," Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990).  This same authority applies to petitioners seeking reconsideration of orders denying habeas relief.  See Hayon v. Reardon, 2021 WL 2206611, at *2 (E.D.N.Y. June 1, 2021) (applying this standard to a bail motion pending reconsideration).

To succeed on a motion for conditional bail, the petitioner must show both "that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[] that make the grant of bail necessary to make the habeas remedy effective." See Mapp, 241 F.3d at 226 (alterations in original) (quoting Grune, 913 F.2d at 44); Swerbilov v. United States, 2005 WL 1177938, at *2 (E.D.N.Y. May 18, 2005) ("The petitioner bears the burden of demonstrating both the 'substantial questions' and the 'exceptional circumstances' required."); Elkimya v. Dep't of Homeland Sec., 484 F.3d 151, 154 (2d Cir. 2007) (holding that courts need not assess whether the petitioner raised "substantial claims" if there are no "extraordinary circumstances" present). Some courts also consider "whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition." Coronel v. Decker, 449 F. Supp. 3d 274, 289 (S.D.N.Y. 2020)

(quoting Boddie v. N.Y. State Div. of Parole, 2009 WL 1531595, at *1 (S.D.N.Y. May 28, 2009)); see also United States v. Whitman, 153 F. Supp. 3d 658, 660 (S.D.N.Y. 2015).  At bottom, the inquiry is whether the petitioner's case is "distinguishable from other habeas corpus cases."  Jackson v. Bennett, 2002 WL 126679, at *1 (S.D.N.Y. Jan. 30, 2002) (quoting Richard v. Abrams, 732 F. Supp. 24, 25 (S.D.N.Y. 1990)).

Because Mr. Calix filed the instant motion pro se, the Court construes his motion liberally to raise the strongest possible arguments it suggests.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (acknowledging that pro se litigants are accorded "special solicitude").

**III. Discussion**

Mr. Calix argues that his case "presents substantial claims likely to succeed on the merits" and "extraordinary circumstances" that require his release on conditional bail.  (See Bail Mot. at 1.)  Specifically, Mr. Calix argues that trial counsel's decision to seek a third competency hearing, which he refers to as an "illegal commitment order," deprived him of his right to a speedy trial.  (See id. at 4.)  He claims that this decision, together with appellate counsel's alleged conflict of interest, constitute serious constitutional violations that simultaneously delayed the disposition of his claims "for roughly another three years."  (See id. at 5-8.)

11

Even so, Mr. Calix has failed to show the existence of any "extraordinary circumstances" that would necessitate bail. Extraordinary circumstances exist only where "necessary to make the habeas remedy effective." Mapp, 241 F.3d at 226 (quoting Ostrer, 584 F.2d at 596 n.1); see also Ancona v. Lantz, 2005 WL 839655, at *9 (D. Conn. Apr. 8, 2005) ("The case for bail is much more compelling after a district court grants a petitioner's habeas petition[] because[,] in those circumstances, it can be truly said that bail is necessary to make the habeas remedy effective."). An alleged violation of a constitutional right does not constitute an "extraordinary circumstance" because such a circumstance does not, on its own, distinguish a petitioner's case from other habeas cases. See Ward v. Piccolo, 2021 WL 3723067, at *1 (S.D.N.Y. Aug. 20, 2021); see also Iuteri v. Nardoza, 662 F.2d 159, 162 (2d Cir. 1981) (finding "nothing unusual" about petitioner's claim that his incarceration "would have been without basis" because "[v]irtually all habeas corpus petitioners argue that their confinement is unlawful"). That Mr. Calix alleges constitutional violations as the basis for his motion does not, in itself, render the circumstances of his case "extraordinary."

Mr. Calix also argues excessive delay as an "extraordinary circumstance." But, reflecting the difficulty of meeting the bail standard, courts in this Circuit have seldom found a case's circumstances so unusual that they merit release on conditional

bail.  The few cases in which courts have granted such relief confirm that "[s]evere health issues have been the prototypical but rare case of extraordinary circumstances that justify release pending adjudication of habeas." Coronel, 449 F. Supp. 3d at 289; see also id. (collecting cases).  Another court also found extraordinary circumstances to exist where immigration authorities detained a petitioner despite a credible claim that the petitioner was a United States citizen.  See Kiadii v. Decker, 423 F. Supp. 3d 18, 20-21 (S.D.N.Y. 2018).

More commonly, though, courts in this Circuit have found that the claimed circumstances do not qualify as "extraordinary." See, e.g., Ward, 2021 WL 3723067, at *2 (risk of COVID-19 transmission in prison); Cary v. Ricks, 2001 WL 314654, at *3 (S.D.N.Y. Mar. 30, 2001) (approaching end of prison term); Hayon v. Reardon, 2021 WL 25365, at *6 (E.D.N.Y. Jan. 4, 2021) (everyday prison conditions); Harris v. Allard, 2002 WL 31780176, at *5 (S.D.N.Y. Dec. 11, 2002) (completion of treatment and vocational programs).

Mr. Calix's claims of delay fall into the latter category. That is, there is nothing extraordinary about the delays in his case, particularly where the Court has already found that Mr. Calix's own actions, including his "refusal to speak or meet with trial counsel and psychiatric professionals," have caused "much of the delay" in these proceedings.  (See dkt. no. 155 in Case No. 13-cr-582 at 15.)  Mr. Calix's filing of two premature

13

habeas petitions also compounded any delay.  (See dkt. no. 5 in Case. No. 18-cv-4613; dkt. no. 3 in Case No. 18-cv-6323.)  In short, there is no fact that distinguishes Mr. Calix's case from other habeas cases.  Jackson, 2002 WL 126679, at *1; see also Hayon, 2021 WL 25365, at *6 (finding no extraordinary circumstances where petitioner raised claim of appellate delay).

Because this case does not present any extraordinary circumstances, the Court need not consider whether Mr. Calix raises any substantial claims.  See Elkimya, 484 F.3d at 154.  Still, the Court observes that at least part of Mr. Calix's claims appear unlikely to succeed given the Court of Appeals has already ruled that the speedy-trial claims are meritless.  See Calix, 787 F. App'x at *6-7.

**IV. Conclusion**

For the reasons set out above, the Bail Motion, (dkt. no. 12), is denied.  The Clerk of the Court is directed to close the open motions in Case No. 20-cv-9680 at dkt. no. 12 and Case No. 13-cr-582 at dkt. no. 157.  The Clerk of the Court is further directed to mail a copy of this Order to Mr. Calix.

**SO ORDERED.**

Dated:   October 31, 2024
         New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge